IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

PORTUS SINGAPORE PTE LTD AND
PORTUS PTY LTD,

      Plaintiff,

v.

SOMFY SYSTEMS, INC.,

      Defendant,

Civil Action No. 9:26-cv-80658

JURY TRIAL DEMANDED

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

PORTUS SINGAPORE PTE LTD and PORTUS PTY LTD (collectively "Plaintiffs" or "Portus") file this Original Complaint and demand for jury trial seeking relief for infringement of the claims of U.S. Patent No. 8,914,526 (the "'526 patent") and U.S. Patent No. 9,961,097 (the "'097 patent") (collectively, the "Patents-in-Suit") by Defendant Somfy Systems, Inc. ("Somfy" or "Defendant") during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

## I. THE PARTIES

1. Plaintiff PORTUS SINGAPORE PTE LTD is a Singapore company with its principal place of business located at 6 Shenton Way, #41-01 OUE Downtown, Singapore 068809.

2. Plaintiff PORTUS PTY LTD is an Australian company with its principal place of business at C/-JGS Property Level 15, 60 Margaret Street, Sydney NSW 2000, Australia.

3. On information and belief, Defendant Somfy Systems, Inc. is a corporation organized and existing under the laws of the State of Delaware. Defendant maintains its Somfy U.S. Headquarters at 121 Herrod Boulevard, Dayton, New Jersey 08810. Defendant also maintains a

regular and established place of business in the Southern District of Florida, including at least 1200 SW 35th Avenue, Boynton Beach, Florida 33426, identified as Somfy's Florida office and showroom. On information and belief, this Boynton Beach location includes Somfy office, showroom, sales, support, product, customer-facing, smart-home, motorized-window-covering, shade-control, awning-control, shutter-control, blind-control, automation, cloud-services, and/or commercial operations for Somfy products and services in Florida. On information and belief, Defendant sells and offers to sell products and services throughout Florida, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Florida and this judicial district. Defendant can be served through its Delaware registered agent, The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, Delaware 19808; at Defendant's Somfy U.S. Headquarters; at Defendant's Florida place of business in this District; C T Corporation System 1200 South Pine Island Road, Plantation, FL 33324, or anywhere Defendant may be found.

4. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, operates, provides, maintains, and/or supports infringing products, applications, cloud services, account systems, smart-home automation systems, motorized shade systems, motorized blind systems, awning systems, shutter systems, drapery systems, screen systems, Somfy myLink systems, Somfy RTS systems, myLink mobile applications, Somfy cloud and account services, remote-monitoring systems, and related services in the United States, including in this District, and otherwise has directed infringing activities to this District in connection with its products and services.

///

**II. JURISDICTION AND VENUE**

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial making, using, selling, offering for sale, importing, operating, providing, and supporting of the Accused Instrumentalities in the United States during the enforceable terms of the Patents-in-Suit. This Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the Southern District of Florida has general and specific personal jurisdiction over Defendant because, directly and through intermediaries, Defendant has committed acts within the District giving rise to this action and is present in, transacts business in, and conducts business with residents of this District and the State of Florida.

7. Plaintiffs' causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Florida.

8. Defendant has committed acts of infringement within this District and the State of Florida by making, using, selling, offering for sale, importing, distributing, providing, operating, and/or supporting the Accused Instrumentalities, including without limitation Somfy myLink systems, Somfy myLink RTS Smartphone and Tablet Interfaces, Somfy myLink mobile applications, Somfy cloud services, Somfy account and authentication services, device-registration systems, remote-access servers and web servers, Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, motorized window-covering devices, home-automation devices, third-party-control integrations, Amazon Alexa integrations, Somfy Synergy API integrations, and related hardware, software, and network infrastructure configured to remotely monitor and/or control devices located in user premises networks.

9. This Court has personal jurisdiction over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Florida and within this District, and, on information and belief, specifically as a result of, at least, committing acts of patent infringement within Florida and this District. Defendant provides products and services accused of infringement to residents of this District that Defendant knew and intended would be used within this District, solicits business from residents of this District, and derives substantial revenue from goods and services provided to residents of this District and Florida.

10. This Court also has personal jurisdiction over Defendant because, in addition to Defendant's regular and established place of business in Boynton Beach, Florida, Defendant has made the Accused Instrumentalities available within this judicial District and has advertised to and solicited residents within the District.

11. The amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1400(b). Defendant is incorporated under the laws of Delaware and therefore does not reside in Florida for purposes of § 1400(b), but, on information and belief, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District, including at least 1200 SW 35th Avenue, Boynton Beach, Florida 33426. Defendant also advertises, markets, sells, offers to sell, distributes, provides, and supports the Accused Instrumentalities in this District.

## III. THE PATENTS-IN-SUIT

13. On December 16, 2014, the '526 patent, entitled "LOCAL AND REMOTE MONITORING USING A STANDARD WEB BROWSER," was duly and legally issued by the United States Patent and Trademark Office. The face of the '526 patent identifies a PCT filing date of December 17, 1999 and a patent term adjustment of 173 days. Accordingly, absent any earlier

terminal disclaimer, lapse, or other enforceability limitation, the '526 patent expired no later than June 7, 2020. Plaintiffs do not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '526 patent. A true and correct copy of the '526 patent is attached hereto as Exhibit A.

14. On May 1, 2018, the '097 patent, entitled "SYSTEM FOR REMOTE ACCESS OF A USER PREMISES," was duly and legally issued by the United States Patent and Trademark Office. The face of the '097 patent identifies U.S. Patent Application No. 14/536,784, filed November 10, 2014, as a continuation of U.S. Patent Application No. 09/868,417, filed as PCT/AU99/01128 on December 17, 1999, and further states that the '097 patent is subject to a terminal disclaimer. Plaintiffs assert the '097 patent only for alleged infringement during its enforceable term and within the applicable damages period, and does not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '097 patent. A true and correct copy of the '097 patent is attached hereto as Exhibit C.

15. Portus owns the entire right, title, and interest in and to the Patents-in-Suit by assignment, including the right to bring this suit and recover damages for past infringement occurring during the enforceable terms of the Patents-in-Suit, subject to the applicable limitations period under 35 U.S.C. § 286 and any other applicable damages limitations. Defendant was not licensed to the Patents-in-Suit, either expressly or implicitly, and did not enjoy or benefit from any rights in or to the Patents-in-Suit during their enforceable terms.

16. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282 and claim patent-eligible subject matter.

## IV. TECHNOLOGY OF THE PATENTS-IN-SUIT

17. The Patents-in-Suit are directed to specific technological solutions for local and remote

monitoring and control of user-premises systems through standard browser-access and external network architectures. The patents explain that users of advanced automation, security, smart-home, motorized-window-covering, shade-control, blind-control, shutter-control, awning-control, drapery-control, screen-control, access-control, and home-control systems commonly need both local and remote access, but conventional systems relied on cumbersome telephone-code or voice-command interfaces and did not provide a geographically independent standard interface that was universally accessible and not platform or hardware dependent. Ex. A, 1:10-56; Ex. C, 1:16-2:42.

18. The specifications identify concrete network-access problems in then-existing systems. Remote monitoring and control systems either assumed that the site to be controlled was already actively connected to the Internet, required technically burdensome manual connection steps, or required direct telephone access that could be expensive and impractical for geographically remote users. Ex. A, 1:50-2:8; Ex. C, 2:40-64. The patents further identify surveillance, alarm-data, access-control, premises-control, and remote interrogation problems, including that data could remain unprotected at the premises and that conventional systems did not provide practical remote monitoring through a standard, location-independent interface. Ex. A, 2:9-31; Ex. C, 2:15-42.

19. The claimed inventions are not the abstract idea of remote monitoring, shade control, blind control, shutter control, awning control, drapery control, screen control, home automation, security control, access control, or presenting information. They recite particular arrangements of hardware processing circuitry, external first networks, user-premises networks, access browser modules, communications servers, connection gateways, authentication or authorization data, URL-based access, creation of network communications sessions, web-server/browser interactions, and serving of information from user-premises devices. See, e.g., Ex. A, claim 57; Ex. C, claim 1.

6

20. The specifications describe concrete architectures that improve computer-network functionality. A browser accesses an extranet located outside the home environment; a communications server in that extranet interconnects on demand with a selected connection gateway in a predetermined home environment; and the selected gateway controls and/or monitors devices in the home environment. Ex. A, Abstract; 2:34-3:4; Ex. C, Abstract; 2:44-3:8. The external network may be implemented as a virtual private network across an Internet substrate, and when a customer connects to the home, the home effectively appears as a website with devices accessible for monitoring or control. *Id.*

21. The claimed arrangements provide technical benefits and non-conventional features, including separating the external network and communications server from user-premises networks, using authorization or authentication data to identify the particular premises network and gateway the user may access, establishing temporary communications sessions on demand, using web-server/browser interactions to provide seamless remote access, and allowing monitoring/control of devices without requiring the user to manually establish a direct technical connection to the premises network. Ex. A, claim 57; Ex. C, claim 1.

22. The patents further disclose concrete structures and operations, including a provider extranet, distributed storage, distributed databases, communications servers, service nodes, Internet access devices, telecommunications networks, premises gateways, premises network terminals, appliances, sensors, control terminals, user-premises network protocol stacks, HTTP server functionality, TCP/IP protocol stacks, device drivers, and physical interfaces. Ex. A, Figs. 1-6; Ex. C, Figs. 1-6.

23. The Patents-in-Suit therefore claim specific improvements to computer-network access and remote user-premises monitoring/control technology, not merely an instruction to apply a

generic business practice on a computer. The claims are directed to particular network architectures and ordered combinations that solve problems rooted in computer networking, remote access, authentication, and gateway-mediated user-premises device control.

## V. ACCUSED INSTRUMENTALITIES

24. The terms "Accused Instrumentalities" and "Accused Products" refer to, by way of example and without limitation, Defendant's Somfy myLink systems, Somfy myLink RTS Smartphone and Tablet Interfaces, Somfy myLink mobile applications, Somfy App services, Somfy cloud services, Somfy account and authorization systems, authentication systems, device-registration systems, remote-access servers and web servers, Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, motorized window-covering products, connected home-control products, smart-home systems, third-party control integrations, Amazon Alexa integrations, Google Assistant integrations, IFTTT integrations, Somfy Synergy API integrations, and all other substantially similar systems, components, applications, services, and instrumentalities used to remotely monitor and/or control devices located in user premises networks during the enforceable terms of the Patents-in-Suit. Plaintiffs' infringement allegations are directed to accused making, using, selling, offering for sale, importing, operating, providing, and/or supporting of those Accused Instrumentalities during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

25. The Accused Instrumentalities include at least one accused instrumentality group: Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems, including Somfy myLink RTS Smartphone and Tablet Interfaces, Somfy myLink mobile applications, Somfy cloud/account, authentication, authorization, notification, device-registration, remote-access, and support services, and Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, and other

connected motorized window-covering devices. Exhibit B supports Plaintiffs' allegations that the Accused Instrumentalities infringe claim 57 of the '526 patent. Exhibit D supports Plaintiffs' allegations that the Accused Instrumentalities infringe claim 1 of the '097 patent.

**A. Somfy myLink, Somfy Cloud, and Somfy RTS Remote-Access Systems - '526 Patent**

26. Somfy provides and supports Somfy myLink systems, Somfy myLink RTS Smartphone and Tablet Interfaces, Somfy myLink mobile applications, Somfy cloud and account services, Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, third-party-control integrations, and related Somfy cloud remote-access systems deployed at user premises and connected to Somfy myLink App services for remote monitoring and/or control. Exhibit B identifies the accused system as including Somfy myLink and Somfy RTS motorized shades, blinds, awnings, and shutters deployed within a home or user premises and connected to the myLink app for remote access and remote monitoring/control of user-premises devices. Ex. B at 1-6.

27. For purposes of Plaintiffs' infringement allegations under the '526 patent, Exhibit B identifies the first network as the Somfy cloud services network located external to the user premises; the first arrangement of processing circuitry as Somfy cloud processing circuitry programmed to manage accounts, add devices, synchronize device states, and provide remote access; the user access browser device as smartphones, tablets, computers, and/or related user interfaces running or accessing the Somfy myLink app, Somfy account portal, or related access-browser functionality; and the second arrangements of processing circuitry as Somfy myLink RTS Smartphone and Tablet Interfaces and related local-premises devices deployed in respective user premises networks. Ex. B at 2-9.

9

28. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice the preamble and limitations [57A] and [57B] of claim 57 because they provide a system for remote access of user premises networks located in respective user premises; include a first external network with programmed processing circuitry that controls network access; include a hardware user access browser device; and include plural second arrangements of processing circuitry located in respective user premises networks. Ex. B at 1-9.

29. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitation [57C] because Somfy cloud services, myLink App backend services, and related Somfy cloud services are adapted by programming to initiate or cause the establishment of network connections with selected Somfy myLink interfaces and local premises devices when an authorized user logs in, registers or adds a device, selects a room, scene, channel, shade, blind, shutter, awning, screen, drapery, or other motorized device, sends a command, or requests information using the Somfy myLink application, Somfy account services, or related interface. Ex. B at 7-8.

30. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitation [57D] because the Somfy myLink app, Somfy account interfaces, Somfy cloud interfaces, and related remote-access functionality operate as access-browser functionality for locating and examining information on the Somfy first network and on user premises networks through URL/URI-addressed resources, HTTP/HTTPS endpoints, authenticated web services, app screens, rooms, channels, scenes, and user selections that cause the client to access Somfy cloud resources and corresponding shade, blind, awning, shutter, screen, drapery, and motorized-device information. Ex. B at 2-5, 9-11.

31. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitations [57E] and [57F] because the Somfy first circuitry arrangement receives authentication and/or authorization data from the user device, including Somfy account credentials, app-login information, device-registration or add-device data, myLink identifiers, room identifiers, channel identifiers, scene identifiers, device names, authorization tokens, session credentials, and/or user permissions, and uses that data to determine which premises network, myLink interface, room, scene, shade, blind, awning, shutter, screen, drapery, or other local networked component the user is authorized to access. Ex. B at 2-5, 11-14.

32. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitations [57G] and [57H] because Somfy's external first network is configured to create a communications session between the authorized user access device and the selected second arrangement of processing circuitry at the user premises, including the Somfy myLink RTS Smartphone and Tablet Interface and associated local network components, and because the selected local-premises processing circuitry provides selected information concerning the user premises network and connected motorized devices. Ex. B at 7-16.

33. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitations [57I] and [57J] because Somfy's first circuitry arrangement serves the selected information to the user access browser device and makes available information and controls for connected shades, blinds, awnings, shutters, screens, draperies, channels, rooms, scenes, groups, schedules, and motorized-device status, including information regarding user-premises network components identified and selected using the Somfy myLink app, Somfy cloud services, Somfy account services, and/or the myLink RTS Smartphone and Tablet Interface. Ex. B at 9-17.

34. To the extent Somfy contends that the user, installer, dealer, contractor, mobile device,

local router, Somfy myLink interface, Somfy RTS motor, shade, blind, shutter, awning, screen, drapery, third-party integration, or other premises component performs a step that Somfy itself does not physically perform, the allegations nevertheless support direct infringement by Somfy because Somfy makes, uses, provides, operates, maintains, and controls the accused myLink cloud and application ecosystem; conditions participation in the accused remote-access system on registration, authentication, account creation, device pairing, installation, setup, configuration, app use, and compliance with Somfy-prescribed technical requirements; and establishes the manner and timing by which users, installers, dealers, contractors, myLink interfaces, RTS motors, motorized window coverings, third-party integrations, and user devices interact with Somfy's cloud services. Somfy's cloud services, applications, servers, account systems, and device-registration architecture direct and control the combined performance of the claimed system and methods, including by requiring use of Somfy-provided software, firmware, cloud endpoints, credentials, device identifiers, prescribed setup flows, and prescribed access flows. Ex. B at 1-17.

**B. Somfy myLink, Somfy Cloud, and Somfy RTS Remote-Access Systems - '097 Patent**

35. Somfy's accused myLink, Somfy cloud, and Somfy RTS remote-access systems also infringe at least claim 1 of the '097 patent. Exhibit D identifies the accused system as including Somfy myLink and Somfy RTS motorized shades, blinds, awnings, shutters, screens, and draperies deployed within a home or user premises and connected to the myLink app and Somfy cloud services for remote monitoring/control of user-premises networks. Ex. D at 1-6.

36. For purposes of Plaintiffs' infringement allegations under the '097 patent, Exhibit D identifies the first hardware processing circuitry running an access browser module as a user smartphone, tablet, computer, and/or myLink app device; the second hardware processing circuitry located in a first network as Somfy cloud services processing circuitry located outside the user

premises; and the connection gateway located in the local network of the user premises as the Somfy myLink RTS Smartphone and Tablet Interface communicatively coupled to local Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, and related motorized-device components. Ex. D at 2-8.

37. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitation [1A] because a user's phone, tablet, computer, or myLink app device runs an access browser module and because Somfy cloud services include server-side processing circuitry located in a first external network. The systems practice limitation [1B] because the Somfy myLink RTS Smartphone and Tablet Interface is located in and forms part of the user's local network or premises network and communicates with connected RTS motorized shades, blinds, awnings, shutters, screens, draperies, and other motorized components. Ex. D at 2-8.

38. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitations [1C], [1D], and [1E] because Somfy cloud services are external to the user premises, accessible via the access browser module, and configured to communicate on demand with the connection gateway; because the connection gateway is integrated with or communicatively coupled to networked components of the local network of the user premises, including Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, scenes, groups, and schedules; and because Somfy cloud services and local myLink components cooperate to create a communication session for monitoring and/or control of those components. Ex. D at 7-12.

39. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitations [1F], [1G], [1H], and [1I] because the first network is configured to receive authentication data from the user device, determine from that authentication data which local network or connection gateway the user is authorized to access, and establish communication with

the selected Somfy myLink interface, Somfy RTS motorized device, shade, blind, awning, shutter, screen, drapery, room, channel, group, schedule, scene, or other local networked component. The authentication and authorization data includes account credentials, app-login data, device-registration or add-device data, myLink identifiers, device identifiers, room identifiers, channel identifiers, permissions, tokens, and session information used by Somfy cloud services to identify the appropriate user premises and connected equipment. Ex. D at 10-15.

40. The Somfy myLink, Somfy cloud, and Somfy RTS remote-access systems practice limitations [1J] and [1K] because Somfy cloud services provide previously stored selected information regarding local networked components of the user premises, including room configuration, channel configuration, scenes, schedules, device names, device groupings, motorized shade/blind/awning/shutter/screen/drapery status, and user-premises device information, and because that information is served to the user access device through the Somfy myLink application, Somfy cloud interfaces, Somfy account services, and/or related myLink interfaces. Ex. D at 12-18.

41. To the extent Somfy contends that the user, installer, dealer, contractor, mobile device, local router, Somfy myLink interface, Somfy RTS motorized device, shade, blind, awning, shutter, screen, drapery, third-party integration, or other premises component performs a step that Somfy itself does not physically perform, the allegations nevertheless support direct infringement by Somfy because Somfy makes, uses, provides, operates, maintains, and controls the accused myLink system as an integrated cloud/app/premises architecture. Somfy conditions access to the accused remote-access functionality on Somfy-prescribed account creation, authentication, registration, installation, configuration, cloud communication, device pairing, app use, firmware/software operation, and use of Somfy's myLink and cloud services. Somfy also

establishes the manner and timing by which the user device, local premises components, myLink interface, Somfy cloud services, and connected RTS motors or motorized window coverings perform the accused functionality, thereby directing and controlling any acts performed by users, installers, dealers, contractors, or local components within the meaning of the governing divided-infringement law. Ex. D at 1-18.

## VI. COUNT I - INFRINGEMENT OF U.S. PATENT NO. 8,914,526

42. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

43. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 57 of the '526 patent by making, using, selling, offering to sell, importing, providing, operating, and/or supporting the Accused Instrumentalities in the United States, including Somfy myLink systems, Somfy myLink RTS Smartphone and Tablet Interfaces, Somfy myLink applications, Somfy cloud services, Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, and related products and services configured for remote access of user premises networks, during the enforceable term of the '526 patent and within the applicable damages period.

44. Defendant's infringement of the '526 patent has injured Plaintiffs, and Plaintiffs are entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '526 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

45. Plaintiffs do not seek injunctive relief or damages for infringement occurring after expiration of the '526 patent.

## VII. COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,961,097

46. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

47. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '097 patent by making, using, selling, offering to sell, importing, providing, operating, and/or supporting the Accused Instrumentalities in the United States, including Somfy myLink systems, Somfy myLink RTS Smartphone and Tablet Interfaces, Somfy myLink applications, Somfy cloud services, Somfy RTS motorized shades, blinds, awnings, shutters, screens, draperies, and related products and services configured for remote access of a user premises, during the enforceable term of the '097 patent and within the applicable damages period.

48. Defendant's infringement of the '097 patent has injured Plaintiffs, and Plaintiffs are entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '097 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

49. Plaintiffs do not seek injunctive relief or damages for infringement occurring after expiration of the '097 patent.

## VIII. CONDITIONS PRECEDENT

50. Plaintiffs have never sold a product. Upon information and belief, no Plaintiffs predecessor-in-interest have ever sold a product. Neither Plaintiffs nor any licensee made or sold a patented article. Plaintiffs are non-practicing entities, with no products to mark. Plaintiffs have pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to

16

recovery are met. Under the rule of reason analysis, Plaintiffs have taken reasonable steps to ensure marking by any licensee producing a patented article.

51. Plaintiffs and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under Plaintiffs' patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiffs and its predecessors-in-interest have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that it was infringing any of Plaintiffs' patents, including the Patents-in-Suit, and thus was not entering into the settlement license to produce a patented article for Plaintiffs or under its patents. Further, to the extent necessary, Plaintiffs will limit its claims of infringement to method or system-use damages for which no marking requirement applies, and/or will show that any marking obligation was satisfied or inapplicable.

52. To the extent Defendant identifies an alleged unmarked product produced for Plaintiffs or under Plaintiffs' patents, Plaintiffs will develop evidence in discovery to show that the alleged unmarked product does not practice the Patents-in-Suit and/or that Plaintiffs have substantially complied with the marking statute. Defendant has not identified any alleged patented article for which § 287(a) would apply. Further, Defendant has not alleged any defendant entity produced a patented article under authority from Plaintiffs.

53. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that an article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of § 287

are not violated. Such a result is further warranted by 35 U.S.C. § 286, which allows for recovery of damages for six years prior to the filing of the complaint, subject to the expiration and other limitations stated herein.

54. For each previous settlement license, Plaintiffs understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiffs and was not a license where the defendant entity was looking to sell a product under any of Plaintiffs' patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiffs and the defendant entity for patent infringement; (3) the defendant entity did not believe it produced any product that could be considered a patented article under 35 U.S.C. § 287; and (4) Plaintiffs believe they have taken reasonable steps to ensure compliance with 35 U.S.C. § 287 for each prior settlement license.

55. Each settlement license that was entered into between a defendant entity and Plaintiffs was negotiated in the face of continued litigation and, while Plaintiffs believed there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

56. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiffs to make an effort to require a prior settling defendant to mark products Plaintiffs had been accused of infringement. To the extent necessary, Plaintiffs will develop evidence in discovery showing that no prior settlement license required or authorized future manufacture or sale of a patented article under the Patents-in-Suit.

///

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and against Defendant as follows:

a. Enter judgment that Defendant has infringed one or more claims of the Patents-in-Suit during the enforceable terms of the Patents-in-Suit;

b. Award Plaintiffs damages adequate to compensate for Defendant's infringement during the enforceable terms of the Patents-in-Suit and within the applicable damages period, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. Award Plaintiffs supplemental damages for any continuing damages period occurring before expiration of the asserted patent rights and before final judgment, to the extent permitted by law;

d. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiffs their reasonable attorneys' fees, expenses, and costs to the extent permitted by law;

e. Award Plaintiffs such other and further relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: June 4, 2026

Respectfully submitted,

*/s/ Victoria E. Brieant*
Victoria E. Brieant (FBN 632961)
Law Office of Victoria E. Brieant, P.A.
400 Ponce de Leon Blvd., Suite 470
Coral Gables, Florida 33146
Tel. (305) 421-7200

**Attorneys for Plaintiffs**
**Portus Singapore PTE Ltd and Portus PTY Ltd**

19